J-M04001-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

IN THE INTEREST OF: J.F., A MINOR

APPEAL OF: J.F.

:
:
:
:
:
:
:
:
:
:
:
:

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 75 WDM 2026

Appeal from the Order Entered June 30, 2026
In the Court of Common Pleas of Allegheny County Juvenile Division at
No(s):  CP-02-JV-0000212-2026

BEFORE:  OLSON, J., NICHOLS, J., and LANE, J.

MEMORANDUM BY OLSON, J.:                    **FILED: August 12, 2026**

Petitioner, J.F., filed a petition for specialized review of his out-of-home placement, in accordance with Pennsylvania Rule of Appellate Procedure 1612,[1] and challenges the juvenile court's dispositional order of June 30, 2026, which committed Petitioner to out-of-home placement.  Based upon our deferential standard of review, we  affirm.

Petitioner is a 14-year-old boy who, following a colloquy at an adjudicatory hearing on June 29, 2026, admitted to and was adjudicated delinquent for acts constituting possession of a firearm by a minor and

---

[1] As our Supreme Court has held:  "the expedited review provided for by [] Rule 1612 is afforded to juvenile petitioners as of right. The Superior Court lacks the discretion to decide whether to grant or deny these petitions for specialized review." **Interest of N.E.M.**, 311 A.3d 1088, 1101 (Pa. 2024).

harassment.[2]  Pursuant to the negotiated plea agreement, the Commonwealth withdrew three additional counts (firearms not to be carried without a license, recklessly endangering another person, and simple assault)[3] and also withdrew a second delinquency petition alleging theft by unlawful taking, firearms not to be carried without a license, and possession of a firearm by a minor.[4]

The juvenile court held a dispositional hearing on the same date.  The Commonwealth presented testimony from Petitioner's probation officer, Charles Bloomer.  Before testifying, Mr. Bloomer addressed the court in a preliminary statement.  He noted that this was Petitioner's first formal juvenile court involvement but expressed concern that Petitioner's firearm-related charges, combined with "a pattern of behavior under community supervision," raised significant questions about whether Petitioner could be safely managed in the community.  N.T. Hearing, 6/29/26, at 7.  Despite this concern, Mr. Bloomer acknowledged several encouraging indicators:  Petitioner had demonstrated recent academic improvement, raising failing grades to passing grades; he had not missed a single day of school since the last hearing, with only one tardy; and his psychological evaluation described him as generally prosocial, capable of insight, and likely to benefit from structured, skill-based

---

[2] 18 Pa.C.S.A. §§ 6110.1(a) and 2709(a)(7), respectively.

[3] **See** 18 Pa.C.S.A. §§ 6106(a)(1), 2705, and 2701(a)(3), respectively.

[4] **See** 18 Pa.C.S.A. §§ 3921(a), 6106(a)(1), and 6110.1, respectively.

intervention. *Id.* at 7-8. Notwithstanding those positives, Mr. Bloomer stated that these strengths had "not yet translated" into a position where the probation office believed it was in Petitioner's best interest to remain in the community and, therefore, he recommended commitment to an out-of-home placement — specifically George Junior or Summit Academy — citing Petitioner's family circumstances, which he characterized as marked by "severe parent/child conflict and permissive environment at the father's domicile." *Id.* at 8.

On direct examination, Mr. Bloomer confirmed that Petitioner had been on electronic home monitoring ("EHM") since the prior hearing and had not incurred a single violation or monitor shutdown. *Id.* at 9. He agreed this represented a "marked improvement" over Petitioner's earlier period of EHM. *Id.* Mr. Bloomer confirmed Petitioner's improvement in school attendance and grades since the prior court date, consistent with his preliminary statement. *Id.* Mr. Bloomer also confirmed that he had referred Petitioner's family to Human Services Administration Operation ("HSAO"), but they did not follow up with the referral; instead, Petitioner appeared to be enrolled in therapy through his school, although HSAO had reached out and conducted an intake conference with him. *Id.* at 10. Mr. Bloomer confirmed that, if Petitioner were to remain in the community, probation would recommend his participation in the Community Intensive Supervision Program ("CISP"). *Id.* He described CISP as an added level of community supervision that limits Petitioner's unsupervised time in the community while still permitting him to

return home after school or daily programming. *Id.* at 10. He explained that CISP provides transportation to appointments and school-related activities, and offers programming that includes an "impact of crime curriculum" and gun violence prevention components. *Id.* at 10-11. Mr. Bloomer further testified that Petitioner's psychological evaluation did not recommend a residential treatment facility, and that his mental health concerns could be addressed through outpatient treatment. *Id.* at 11-12. Finally, when asked about additional recommended probation conditions, Mr. Bloomer indicated that, aside from out-of-home placement, his recommendations were: payment of all associated court costs and fees; a no-contact provision with the victim (though he noted uncertainty as to whether that remained applicable given the amended delinquency petition); and compliance with mental health treatment. *Id.* at 12. The Commonwealth did not conduct cross-examination.

Petitioner's counsel presented two witnesses. First, Derrick Chaffin, a loan officer/coordinator with HSAO, testified on direct examination that he had been working with Petitioner since the HSAO referral was made. *Id.* at 14. At the time of the hearing, he met with Petitioner once in person and had a second meeting was scheduled for the following day. *Id.* He had also been in contact with Petitioner's mother. *Id.* Mr. Chaffin testified that he discussed a treatment plan with Petitioner during their initial intake meeting. *Id.* At that meeting, Petitioner's mother provided insurance information, and Mr. Chaffin assisted the family in identifying therapy resources. *Id.* Specifically,

he identified a therapy provider located approximately eight minutes from the family's home, at which Petitioner's mother was already a patient. *Id.* Mr. Chaffin testified that the provider indicated Petitioner could be seen concurrently with his mother's appointments. *Id.* Mr. Chaffin also noted that Petitioner appeared to be receiving some form of therapy through his school, though he acknowledged uncertainty as to the precise format — describing it as potentially a virtual or telephone-based service. *Id.* at 14-15. Mr. Chaffin testified that, based on his conversations with Petitioner and Petitioner's mother, Petitioner appeared willing and interested in participating in mental health treatment. *Id.* at 15. Finally, Mr. Chaffin confirmed that he had not personally received a copy of Petitioner's mental health evaluation. *Id.* The Commonwealth did not conduct cross-examination.

Next, Petitioner's father ("Petitioner's Father") testified on direct examination that Petitioner previously resided with him and that he and Petitioner's mother share custody of Petitioner. *Id.* at 16–17. Petitioner's Father testified that he preferred Petitioner remain in the community rather than be committed to an out-of-home placement. *Id.* at 17. He explained that Petitioner would benefit from better supervision in the community, would be removed from negative influences, and would be surrounded by family and positive influences. *Id.* He further noted the importance of Petitioner remaining in his current school environment, where Petitioner had begun to excel academically. *Id.* Petitioner's Father admitted that although he is a named victim in Petitioner's case, he supports Petitioner's release into the

community. *Id.* He testified that Petitioner had shown genuine remorse, apologized to him personally, and became more respectful in the period following the incident. *Id.* at 17–18. Petitioner's Father testified that, if Petitioner were returned to his home, he would ensure that an adult was always present — a practice he had already implemented during Petitioner's time at his residence since the incident. *Id.* at 17. Petitioner's Father testified that he observed significant changes in Petitioner since the court involvement began. *Id.* at 18. He stated that when the incident originally occurred, he did not believe Petitioner fully understood its impact or severity. *Id.* Over the course of the court proceedings, however, that understanding had "sunk in" and made a meaningful difference in Petitioner's outlook. *Id.* Petitioner's Father described Petitioner as having apologized, demonstrated remorse, recognized the gravity of his conduct, became more serious about school, and began to conduct himself more appropriately for a 14-year-old. *Id.* Petitioner's Father testified that Petitioner had shown academic improvement even prior to this court involvement, after being enrolled at an alternative school that had a different environment and offered more individualized attention. *Id.* at 18-19. He acknowledged, however, that Petitioner's movement between the new school, juvenile detention, and home caused instability in his education. *Id.* at 19. He testified that while Petitioner was detained, Petitioner appeared more discouraged and less motivated, noting that Petitioner reported receiving as little as approximately one hour of schooling per day during detention. *Id.* Petitioner's Father testified that he

discussed mental health treatment with Petitioner, and Petitioner appeared willing to cooperate with such treatment. *Id.*

On cross-examination, Petitioner's Father confirmed that all firearms had been removed from his house and that no firearms were present in his vehicle. *Id.* at 20-21. Petitioner's Father confirmed that his girlfriend also resided at the house and reiterated that no firearms were present there. *Id.* at 21.

Following this testimony, Petitioner's counsel was permitted to read into the record a letter written by Petitioner, in which Petitioner expressed remorse and accepted responsibility for his conduct. *Id.* at 21-22. He stated that he spent considerable time reflecting on his actions and believed that, given the opportunity, he would make different choices. *Id.* at 22. Petitioner acknowledged that he should have sought guidance from a trusted adult rather than allowing himself to be influenced by others and expressed regret that he chose the latter. *Id.* Petitioner stated that the smaller class sizes and supportive structure in his new school helped him focus, take ownership of his education, improve his grades, and regain confidence in himself and his future prospects. *Id.* Petitioner articulated a concrete vocational goal — a career in welding — and demonstrated an understanding that achieving that goal would require continued discipline, personal responsibility, and sustained effort. *Id.* Petitioner closed his letter by respectfully requesting that the court afford him the opportunity to continue his progress through the guidance, education, and structured supervision offered by the CISP program, expressing a genuine

desire to learn from the experience and move forward constructively. *Id.* at 23.

Finally, Petitioner's counsel moved into evidence a letter to the juvenile court from Licia Lentz, Petitioner's school principal. Ms. Lentz's letter reflected Petitioner's progress, positive engagement, personal growth, and accountability. *Id.*

At the close of the hearing, Petitioner's counsel requested that Petitioner remain on EHM and be committed to CISP. The juvenile court acknowledged that "nothing but good things" had been presented at the hearing regarding Petitioner and acknowledged that he was "an intelligent young man." *Id.* at 26-27. Nevertheless, the court stated that it had not heard — at the hearing or at any prior proceeding — a satisfactory explanation for why Petitioner possessed a firearm. *Id.* at 27. The court remarked, "One thing I haven't heard today or any other day is a good reason why he has a firearm. Haven't heard it. I don't think I ever will in regard to a juvenile having a firearm. That's the issue here today." *Id.* While conceding that Petitioner had improved, the court characterized the improvements as expected rather than exceptional, suggesting that behavioral improvement following arrest and charges was a common occurrence and therefore not a compelling basis for a community-based disposition. *Id.* The court concluded that while Petitioner was "going on the right track," he was "not there yet." *Id.* Accordingly, the court adjudicated Petitioner delinquent, deferred final disposition, and ordered Petitioner to be committed to an appropriate out-of-home placement. The

court further ordered that Petitioner be detained immediately and that he continue with his recommended mental health treatment. *Id.* Following the court's ruling, Petitioner's counsel requested that Petitioner be permitted to reside at home during the period in which disposition remained deferred, but the court denied the request. *Id.* at 28.

On July 9, 2026, Petitioner, through court-appointed counsel, timely filed the instant Petition. On July 10, 2026, this Court ordered that: (1) the juvenile court state on the record its reasons for the June 29, 2026 dispositional order, as required by Rule 1612(f); and (2) the Commonwealth file a response to the instant Petition. The juvenile court filed its statement of reasons on July 14, 2026. The Commonwealth filed its response on July 20, 2026. Petitioner raises the following claim:

> In this petition for expedited judicial review, the matter complained of is whether the juvenile court abused its discretion in committing [Petitioner] to an out-of-home placement facility.

Petition, 7/9/26, at 12.

Petitioner's core legal argument rests on the proposition that a juvenile court abuses its discretion when it applies a categorical or standardized approach to disposition rather than conducting an individualized assessment of the child's circumstances. *See* Petition, 7/9/26, at 17. Petitioner invokes *Commonwealth v. Mola*, 838 A.2d 791 (Pa. Super. 2003), in which this Court vacated a judgment of sentence where the trial court had adopted a blanket sentencing policy, and *In re R.W.*, 855 A.2d 107 (Pa. Super. 2004),

- 9 -

in which this Court extended that rationale to juvenile delinquency proceedings. In **R.W.**, this Court held that a juvenile court judge's blanket policy of dismissing minor drug charges — without considering the individual child's treatment, supervision, rehabilitation, and welfare needs — constituted a manifest abuse of discretion. **See In re R.W.**, 855 A.2d at 111. Similarly, Petitioner contends that the juvenile court abused its discretion in ordering out-of-home placement because its decision was driven primarily, if not exclusively, by the nature of the charge against him — namely, that a firearm was involved. **See** Petition, 7/9/26, at 17.

Petitioner further argues that the record undermined the necessity of out-of-home placement. Specifically: Mr. Bloomer testified to Petitioner's marked improvements in school attendance, grades, and EHM compliance; Petitioner's psychological evaluation did not recommend a residential treatment facility and indicated his mental health needs could be addressed through outpatient treatment; both Mr. Chaffin and Petitioner's Father confirmed Petitioner's willingness to engage in treatment; and a concrete community-based treatment plan was already in place. **See id.** at 17-18. Petitioner contends that no specific evidence was presented establishing either that he posed a danger to the community beyond the nature of the charge itself, or that community-based treatment was inadequate to meet his needs. **Id.** at 18. Therefore, Petitioner contends that the juvenile court's decision to commit him to an out-of-home placement facility was not based on the totality of his individual facts and circumstances. **Id.** He further contends that "the

evidence of record established that community-based treatment was the least restrictive dispositional alternative that is consistent with the protection of the public and best suited to his treatment, supervision, rehabilitation, and welfare." *Id.*; *see also* 42 Pa.C.S.A. § 6352(c).

Petitioner proposes that he be placed on probation, subject to a review hearing to assess his progress, with the following conditions: (1) commitment to CISP; (2) EHM for a period to be determined by the court; (3) participation in any mental health treatment that is recommended; (4) daily school attendance; (5) completion of the Impact of Crime Curriculum; (6) community service; and (7) payment of court costs and restitution. Petition, 7/9/26, at 19. Petitioner requests that this Court grant his Petition, vacate the juvenile court's June 29, 2026 dispositional order committing him to an out-of-home placement facility, and remand for a new dispositional hearing at which he would be ordered to participate in and successfully complete CISP. In the alternative, Petitioner requests any other relief that "law, justice, and fundamental fairness require." *Id.* at 20.

In response, the Commonwealth argues that the juvenile court properly applied the correct legal standard in ordering out-of-home placement and did not abuse its discretion in doing so. Commonwealth's Response, 7/20/26, at 4. As noted above, Petitioner contends that the juvenile court placed undue weight on the delinquent conduct and failed to adequately consider his best interests and individual needs. The Commonwealth counters that this framing misstates the governing standard. Under Pennsylvania's balanced and

restorative justice framework, 42 Pa.C.S.A. § 6352, a dispositional order must simultaneously serve the protection of the community, impose accountability for the offense committed, and foster the juvenile's competencies for rehabilitation — not focus on best interests alone. *Id.* at 4-5.

The Commonwealth further argues that the juvenile court's focus on firearm possession was not only permissible but appropriate, as illegal possession of a firearm by a juvenile is qualitatively distinct from other delinquent conduct when assessing community safety and suitability for home placement. *Id.* at 5. Finally, the Commonwealth notes that this Court's prior decision in ***In the Interest of D.W.*** is directly on point. ***In the Interest of D.W.***, 220 A.3d 573 (Pa. Super. 2019), *superseded by rule on other grounds, as recognized in **Interest of N.E.M.***, 311 A.3d 1088 (Pa. 2024). In ***D.W.***, this Court upheld the same juvenile court judge's out-of-home placement order under similar circumstances and rejected the juvenile's "bare assertion that the juvenile court applied a blanket imposition of commitment simply because the juvenile was found in possession of the gun." ***See In the Interest of D.W.***, 220 A.3d at 580. Accordingly, the Commonwealth submits that the instant Petition should be denied. Commonwealth's Response, 7/20/26, at 4.

In its July 14, 2026 statement, the juvenile court grounded its placement decision in the following findings.

First, the court credited Mr. Bloomer's statement that, although this was Petitioner's first formal court involvement, "the circumstances presented in

- 12 -

these cases combined with a pattern of behavior under community supervision raises significant concerns about whether he can safely and effectively be managed in the community at this time." Juvenile Court Statement, 7/14/26, at 3 (quoting N.T. Hearing, 6/29/26, at 7). The court further noted, although Mr. Bloomer acknowledged Petitioner's recent academic improvements and the psychological evaluation (which did not recommend out-of-home placement), the probation department recommended commitment to an appropriate facility that could meet Petitioner's supervision and treatment needs. *Id.* at 3-4 (citing N.T. Hearing, 6/29/26, at 7–8). This recommendation was based, in part, on the fact that Petitioner's family circumstances were marked by "severe parent/child conflict and permissive environment at the father's domicile." *Id.* at 4 (quoting N.T. Hearing, 6/29/26, at 8).

The court acknowledged Mr. Bloomer's testimony that Petitioner had no ankle-monitor violations, as well as Petitioner's Father's testimony that Petitioner had taken appropriate accountability for his actions, understood their gravity, and expressed remorse, *Id.* at 4-5. The court also acknowledged Petitioner's letter of apology. *Id.* at 5. The court recognized the positive developments in Petitioner's grades and attendance, as well as the good intentions of his parents. *Id.* However, the court noted that the parents' expressed commitments were prospective in nature, and that "the path that [Petitioner] has followed which led him to the instant situation . . . resulted in [his] being charged with the theft of a firearm[.]" *Id.* The court

- 13 -

found that this underlying conduct jeopardized Petitioner's safety as well as that of the broader community. *Id.* Therefore, the court determined that out-of-home placement was necessary to address Petitioner's mental health needs while allowing his education to continue. *Id.* In conclusion, the court stated that its disposition of out-of-home placement was supported by the evidence and should be affirmed. *Id.* at 5-6.

When a petition for specialized review of a juvenile out-of-home placement order is filed pursuant to Rule 1612, this Court's review is limited to the juvenile court's decision to place the child outside the home; it may not reach any challenge to the court's selection of a specific placement site or to the underlying adjudication of delinquency. *See* Pa.R.A.P. 1612(c)(1)-(2); *Interest of A.R.A.*, 315 A.3d 877, 881 (Pa. Super. 2024). The applicable standard of review is abuse of discretion. *In re A.D.*, 771 A.2d 45, 53 (Pa. Super. 2001) (*en banc*); *see also* Pa.R.A.P. 1612 cmt. The Pennsylvania Supreme Court has explained:

> the term discretion imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the trial judge. Absent an abuse of that discretion, an appellate court should not disturb a trial court's discretionary ruling. An appellate court will not find an abuse of discretion based on a mere error of judgment, but rather [discretion is abused] where the trial court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.
>
> Importantly, an appellate court should not find that a trial court abused its discretion merely because the appellate

- 14 -

court disagrees with the trial court's conclusion. Indeed, when reviewing the trial court's exercise of discretion, it is improper for an appellate court to step into the shoes of the trial judge and review the evidence *de novo*. In other words, an appellate court may not disturb a trial court's discretionary ruling by substituting its own judgment for that of the trial court.

*Commonwealth v. DiStefano*, 670 Pa. 347, 265 A.3d 290, 297-298 (2021) (quotation marks, citations, and brackets omitted).

The juvenile court is afforded broad and flexible discretion in fashioning a disposition and retains considerable authority to review and modify any commitment in light of the child's rehabilitative progress. *In re Love*, 646 A.2d 1233, 1238 & n.5 (Pa. Super. 1994). As this Court has explained, "[w]ithout extreme specificity as to the error by the court in imposing the commitment, there can be no basis for setting aside the disposition." *Id.* at 1238 n.5.

Pursuant to Section 6352(a) of the Juvenile Act, a dispositional order must "be consistent with the protection of the public interest and best suited to the child's treatment, supervision, rehabilitation and welfare" and must, "as appropriate to the individual circumstances of the child's case, provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable the child to become a responsible and productive member of the community." 42 Pa.C.S.A. § 6352(a).

Before entering a dispositional order, the juvenile court must state its disposition and the reasons for its disposition on the record in open court,

along with the goals, terms and conditions of the disposition. **See** 42 Pa.C.S.A. § 6352(c). Where the disposition requires out-of-home placement, the court must additionally identify the specific facility or type of facility and state the findings of fact and conclusions of law on which the decision is based. **Id.** The court must explain why commitment constitutes "the least restrictive placement that is consistent with the protection of the public and best suited to the child's treatment, supervision, rehabilitation and welfare." **Id.**

Section 6301 of the Act directs that a child be separated from their parents "only when necessary for his welfare, safety or health or in the interests of public safety." 42 Pa.C.S.A. § 6301(b)(3). The Act further instructs the juvenile court to employ the "least restrictive intervention that is consistent with the protection of the community, the imposition of accountability for offenses committed and the rehabilitation, supervision and treatment needs of the child." 42 Pa.C.S.A. § 6301(b)(3)(i).

On appeal, Petitioner claims that the juvenile court abused its discretion when it committed him to out-of-home placement because: the juvenile court "base[d] its decision primarily, if not exclusively, on [Petitioner's] charges" and "[t]here was no specific evidence presented establishing that [Petitioner] could not be treated in the community, or that out-of-home placement was the least restrictive and appropriate placement." **See** Petition, 7/9/26, at 17.

At the outset, we disagree with Petitioner's characterization of the dispositional order as being based "primarily, if not exclusively, on [his] charges." **See id.** It is true that, in committing Petitioner to out-of-home

placement, the juvenile court emphasized the fact that Petitioner was adjudicated delinquent for possessing a firearm. *See* N.T. Hearing, 6/29/26, at 27; *see also* Juvenile Court Statement, 7/14/26, at 1-6. Nevertheless, "the nature and gravity of the delinquent act" is an important factor for the juvenile court to consider, as the juvenile court is statutorily required to enter a dispositional order which is "consistent with the protection of the public interest and best suited to the child's treatment, supervision, rehabilitation and welfare." *See* 42 Pa.C.S.A. § 6352(a); *see also Interest of X.R.*, 350 A.3d 1042, 1047 (Pa. Super. 2025) (declaring that the juvenile court properly "considered the nature and gravity of the delinquent act" in determining that "out-of-home placement was the least restrictive alternative"). It is clear that Petitioner's act of possession of a firearm by a minor, in and of itself, directly implicates the "protection of the public interest" and is a relevant factor that may inform the juvenile court as to "the child's treatment, supervision, rehabilitation and welfare." *See* 42 Pa.C.S.A. § 6352(a). Thus, the juvenile court did not abuse its discretion when it weighed the fact that Petitioner was adjudicated delinquent for possessing a firearm as a factor relevant to its entry of the dispositional order committing him to out-of-home placement.

Moreover, the record refutes Petitioner's claim that the juvenile court "base[d] its decision primarily, if not exclusively, on [Petitioner's] charges" – and, indeed, supports the juvenile court's decision to commit Petitioner to out-of-home placement. Specifically, Petitioner's probation officer, Charles Bloomer, informed the juvenile court that Petitioner "does have strengths that

- 17 -

[can] be built upon. However, . . . these strengths have not yet translated into a place where probation believes that it is in the best interest of [Petitioner] to remain in the community." N.T. Hearing, 6/29/26, at 8. Of note, Mr. Bloomer informed the juvenile court that Petitioner is in need of mental health treatment and "structured skill-based intervention." *See id.* at 7-8 and 11. Yet, Mr. Bloomer declared that Petitioner's "family circumstances . . . are marked by severe parent/child conflict and permissive environment at the father's domicile" – and, as such, Mr. Bloomer opined that "[t]he Adel Home placement is the most prudent setting capable of meeting [Petitioner's] supervision and treatment needs at this time." *Id.* at 8. Mr. Bloomer further noted that "the circumstances presented in [this] case[] combined . . . with a pattern of behavior under community supervision raises significant concerns about whether [Petitioner] can safely and effectively be managed in the community at this time." *Id.* at 7.

The above evidence supports the juvenile court's determination that Petitioner cannot be safely managed in the community and that his home environment is inadequate to support his rehabilitation at this time. Therefore, the juvenile court was within its discretion when it determined that out-of-home placement is "the least restrictive intervention that is consistent with the protection of the community, the imposition of accountability for offenses committed and the rehabilitation, supervision and treatment needs of" Petitioner. *See* 42 Pa.C.S.A. § 6301(b)(3)(i); *see also Interest of D.W.*, 220 A.3d at 581 (where the evidence supported the court's determination that

the juvenile was in need of "a level of supervision and rehabilitation that he [could not] receive at home," the juvenile court was within its discretion to order out-of-home placement).

Although the record clearly supports a finding that Petitioner has shown marked improvement and we commend him for that, based upon our highly deferential standard of review, we conclude that the juvenile court did not abuse its discretion when it committed Petitioner to out-of-home placement. We, therefore, deny Petitioner's request for relief and affirm the juvenile court's order.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 8/12/2026